**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOUSTON CASUALTY COMPANY, *Plaintiff*, v. KINSALE INSURANCE COMPANY, *Defendant*. | Civil No.: 2:24-cv-7866 (KSH) (SDA) <br><br> **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.      Introduction**

This insurance coverage dispute is before the Court on a motion brought by defendant Kinsale Insurance Company ("Kinsale") to compel arbitration and to dismiss or to stay this action pending arbitration. (D.E. 21.) For the reasons set forth below, Kinsale's motion will be granted, and the matter will be stayed.

**II.     Background & Procedural History**

The coverage dispute arises from an apartment complex construction project (the "project") in Englewood, New Jersey. (D.E. 1, Compl. ¶¶ 7-16.) BBC Englewood LLC owns the property and hired ARC New Jersey LLC ("ARC") as the general contractor. (*Id.* ¶¶ 7-9.) ARC hired FM Construction Group LLC ("FM") as a subcontractor, and FM hired Don Carlos Construction LLC ("Don Carlos") for roofing and siding work. (*Id.* ¶¶ 10-11.) On August 24, 2021, Jose Luis Melgar Castillo ("Castillo")—an employee of Don Carlos—was injured while installing gutters. (*Id.* ¶¶ 12-13, 15.) Castillo sued BBC Englewood LLC, ARC, and FM in the Essex County Law Division, alleging negligence (the "underlying action"). (*Id.* ¶¶ 12, 14.)

1

BBC Englewood LLC and ARC brought a third-party action against Don Carlos for contribution and indemnification. (*Id.* ¶ 16.) Eventually, FM was also added as a defendant. (*Id.* ¶ 47.)

Before Don Carlos started work on the project, Kinsale issued it two general liability policies, one primary (the "Kinsale Policy") and one excess. (*Id.* ¶¶ 27, 36.) The Kinsale Policy provided limits of $1,000,000 for each occurrence and $2,000,000 aggregate. (*Id.* ¶ 29 & Ex. 5, Kinsale Policy, at 2.) While Don Carlos is the only named insured, the Kinsale Policy defined "additional insureds" to be "[b]lanket, as required by written contract, executed prior to the start of work on the project" at "[l]ocations as required and specified by written contract, executed prior to the start of work on the project." (*Id.* ¶ 29 & Ex. 5, Kinsale Policy, at 67, 70.) The Kinsale Policy also provided contractual liability coverage for damages "assumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' . . . occurs subsequent to the execution of the contract or agreement." (*Id.* ¶ 35 & Ex. 5, Kinsale Policy, at 7.)

The Kinsale Policy included an arbitration clause:

**BINDING ARBITRATION**

All disputes under this Policy shall be subject to binding arbitration as follows:

a. All disputes over coverage or any rights afforded under this Policy, including whether an entity or person is a Named Insured, an insured, an additional insured, or entitled to coverage under the Supplementary Payments provisions of this Policy or the effect of any applicable statutes or common law upon the contractual obligations owed, shall be submitted to binding arbitration, which shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

The arbitration forum and process shall be agreed to by the parties. In the event the parties cannot agree on an arbitration forum and process, the matter shall be submitted to the American Arbitration Association. The arbitration shall be before a panel of three arbitrators, unless the parties agree to one arbitrator, all of whom shall have experience in insurance coverage of the type afforded by this Policy. If the parties select a panel of three arbitrators, each party shall select an arbitrator and the chosen arbitrators shall select a third arbitrator. The American Arbitration Association shall decide any disputes concerning the selection of the

2

>Arbitrators. The potential arbitrators from which the arbitrators shall be selected shall not be confined to those provided by the American Arbitration Association. Each party shall bear the costs of its arbitrator and shall share equally the costs of the third arbitrator and arbitration process. In the event of a single arbitrator, the cost shall be shared equally by the parties. The decision of the arbitration is final and binding on the parties.

(Ex. 5, Kinsale Policy, at 25-26.)

A subcontract between Don Carlos and FM was executed before Don Carlos began work on the project. (D.E. 1, Compl. ¶ 30.) It required Don Carlos to obtain general liability insurance coverage—which it ultimately got through Kinsale—and stated

>[i]t is hereby agreed and understood that the Contractor [FM] and Owner [defined as "the owner of any job sight"] are named as additional insured. The coverage afforded to the additional insured under this policy shall be primary insurance. If the additional insured has other insurance, which is applicable to the loss, such other insurance shall be in excess or contingent basis.

(*Id.* ¶ 23 & Ex. 4, FM/Don Carlos Contract, at § 11(A)(iii).) And to the extent that FM was required "to designate any person or entity as additional insured under [its] policies of liability insurance," the contract provided that "such person or entity also shall be named as additional insured on the policies procured by" Don Carlos. (*Id.* ¶ 24 & Ex. 4, FM/Don Carlos Contract, at § 11(A)(iv).) Don Carlos further agreed to defend and indemnify FM and the "Owner" "from any and all claims, losses, costs and damages" because of injury to any person arising out of Don Carlos's work. (*Id.* ¶ 26 & Ex. 4, FM/Don Carlos Contract, at § 9.)

FM had executed a subcontract with ARC before it entered into the contract with Don Carlos. (*Id.* ¶ 20.) That subcontract required FM to name ARC, the "Owner, and all other parties reasonably requested by Contractor" as additional insureds in its general liability insurance policy and stated FM's insurance applied on a primary and non-contributory basis for the additional insureds. (*Id.* & Ex. 3, ARC/FM Contract, at § 3.1.)

3

Houston Casualty Company ("HCC"), the plaintiff in this federal action, alleges that the FM/Don Carlos subcontract and the ARC/FM subcontract required BBC Englewood, ARC, and FM to be named as additional insureds under the Kinsale Policy. (*Id.* ¶ 31.) HCC comes into the picture because it issued an insurance policy (the "HCC Policy") to ARC, which HCC alleges also named BBC Englewood LLC and FM as insureds. (*Id.* ¶¶ 40-42 & Ex. 7, HCC Policy, at 133-150.) The HCC Policy applies in excess of other primary insurance available to the named insureds. (*Id.* ¶ 43 & Ex. 7, HCC Policy, at 91.)

On September 25, 2023, counsel for BBC Englewood LLC and ARC sent a letter to Don Carlos and Kinsale "to confirm" that Don Carlos "will be providing a defense, indemnification, and insurance coverage to" BBC Englewood LLC and ARC in the underlying action, pursuant to the insurance policies and contracts discussed *supra*. (*Id.* ¶ 44 & Ex. 8, at 10.) Kinsale refused, stating that it did not have enough information to make a coverage decision. (*Id.* ¶ 45 & Ex. 9.) Defense counsel in the underlying action made two more demands for defense and indemnification, one before and one after FM was added as a defendant. (*Id.* ¶¶ 46-47 & Exs. 10, 11.) On June 19, 2024, HCC re-tendered the defense and indemnification of BBC Englewood LLC, ARC, and FM (the alleged "additional insureds") to Kinsale. (*Id.* ¶ 48 & Ex. 12.) Kinsale has not agreed to defend and indemnify the additional insureds, and HCC has been defending the underlying action to date. (*Id.* ¶¶ 49, 67-68.)

On July 18, 2024, HCC sued Kinsale in this Court for declarations as to Kinsale's obligations under the Kinsale Policy and for reimbursement "for all amounts paid by HCC in connection with the defense of" the additional insureds. (*Id.* ¶¶ 50-70.) Specifically, HCC asked this Court to declare that BBC Englewood LLC, ARC, and FM are additional insureds under the Kinsale Policy (Count One); that Kinsale has a duty to defend the additional insureds under the

4

Kinsale Policy (Count Two); that Kinsale has a duty to indemnify the additional insureds under the Kinsale Policy (Count Three); that the Kinsale Policy provides contractual liability coverage for Don Carlos's contractual obligation to indemnify BBC Englewood and FM in the underlying action (Count Four); and that HCC is entitled to damages due to Kinsale's "failure to defend" the additional insureds in the underlying action (Count Five).  (*Id.*)

Kinsale moved to compel arbitration on December 20, 2024, arguing that HCC should be bound to the Kinsale Policy's arbitration clause under a theory of equitable estoppel.  (D.E. 21-1, Mov. Br., at 3.)  Kinsale argues that HCC is "knowingly exploiting" the Kinsale Policy by "seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract," and should therefore be bound to the entire agreement.  (*Id.* at 19.)  Opposing, HCC responds that equitable estoppel does not apply, since it is seeking indirect, rather than direct, benefits under the Kinsale Policy.  (D.E. 31, Opp., at 8-9.)  It argues that it "brought suit under its independent equitable right of contribution, not as a subrogee," which "makes all the difference for the equitable estoppel analysis."  (*Id.* at 9.)  In reply, Kinsale alleges that HCC is seeking direct benefits under the Kinsale Policy as a subrogee of the additional insureds and is also asserting claims that are entirely dependent on the Kinsale Policy and must be determined by reference to the policy.  (D.E. 36, Reply, at 7.)

**III.    Standard of Review**

Before compelling arbitration, courts look to whether "(1) a valid agreement to arbitrate exists, and (2) [whether] the particular dispute falls within the scope of the agreement." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 (3d Cir. 2024) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).

"The standard by which a court must conduct this analysis can either be under Federal Rule of Civil Procedure 12(b)(6) (motion to dismiss) or Rule 56(a) (summary judgment)." *Triola v. Dolgencorp, LLC*, 2022 WL 16834579, at *2 (D.N.J. Nov. 9, 2022) (Kugler, J.) (citing *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 771 (3d Cir. 2013)). "[W]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint), the [Federal Arbitration Act] would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Guidotti*, 716 F.3d at 773-74 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474, 481-82 (E.D. Pa. 2011)).

On the other hand, Rule 56 provides the correct standard when "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement." *Robert D. Mabe v. OptumRX*, 43 F.4th 307, 324-25 (3d Cir. 2022) (quoting *Guidotti*, 716 F.3d at 774). Under Rule 56, limited discovery may be warranted if a factual dispute arises, but discovery is not required "when no factual dispute exists as to the existence or scope of the arbitration agreement." *Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 249 (3d Cir. 2025) (quoting *Young*, 119 F.4th at 319-20).

Here, HCC attaches the Kinsale Policy as an exhibit to its complaint; that policy contains an arbitration agreement. (*See* D.E. 1, Compl. & Ex. 5, Kinsale Policy, at 25-26.) The affirmative defense of arbitrability is therefore apparent based on "documents relied upon in the complaint." *Guidotti*, 716 F.3d at 773-74 (quoting *Somerset*, 832 F. Supp. 2d at 481). However, HCC asserts that it is not a signatory to the Kinsale Policy and did not agree to submit to

arbitration. (D.E. 31, Opp., at 2-6.) As such, the Court finds that Rule 56 applies because HCC has "come forth with reliable evidence . . . that it did not intend to be bound by the arbitration agreement." *Mabe*, 43 F.4th at 325 (quoting *Guidotti*, 716 F.3d at 774).

Under Rule 56, summary judgment is proper where the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). On that showing, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citing Fed. R. Civ. P. 56(e)). If the nonmoving party fails to meet its burden, summary judgment may be granted against it. *Id.* at 249-50.

**IV.    Discussion**

Kinsale's motion to compel rests on a single legal issue[1]: does equitable estoppel apply to compel HCC to arbitrate its claims against Kinsale?

---

[1] Both Kinsale and HCC focus on whether equitable estoppel applies to bind HCC to the Kinsale Policy's arbitration agreement. In so doing, neither party raises any factual disputes about the existence or validity of the arbitration agreement. The Court therefore finds that limited discovery is not required. *See Cornelius*, 133 F.4th at 249-50.

Although HCC alternatively requests limited discovery as to "whether Kinsale detrimentally relied on any conduct by HCC" (D.E. 31, Opp., at 21-22), as discussed *infra*, while detrimental reliance may be required for the "intertwinement" theory of equitable estoppel, is not a necessary element of the "knowingly exploits" theory. *See Griswold v. Coventry First LLC*, 762 F.3d 264, 272-73 (3d Cir. 2014) (discussing the requirements of the "knowingly exploits" theory). Since Kinsale does not allege, and this Court does not find, that the "intertwinement" theory applies, limited discovery as to its requirements is not necessary.

7

A. <u>Agreement to Arbitrate</u>

A non-signatory to a contract with an arbitration agreement may be compelled to arbitrate if "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract." *Griswold*, 762 F.3d at 271 (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). The Third Circuit has recognized numerous theories under which a signatory can bind a non-signatory to an arbitration agreement, but only one theory is at issue here—equitable estoppel. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber and Resin Intermediates S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001).

There are two distinct theories of equitable estoppel, the "knowingly exploits" theory and the "intertwinement" theory. *Id.* at 199-200. Kinsale argues that HCC should be bound to the arbitration agreement under the knowingly exploits theory. That theory "prevent[s] a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *Id.* at 200; *see Griswold*, 762 F.3d at 273 ("Equitable estoppel thus prevents a non-signatory from cherry-picking the provisions of a contract that it will benefit from and ignoring other provisions that don't benefit it or that it would prefer not to be governed by (such as an arbitration clause).") (internal citation and quotation marks omitted). Consequentially, if "the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement," a court may hold that party to the arbitration clause. *DuPont*, 269 F.3d at 199.

A non-signatory "exploits" or "embraces" a contract in two ways: "(1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce terms of that contract or asserting claims" based on the contract. *Griswold*, 762 F.3d at 272 (quoting *Haskins v. First Am. Title Ins. Co.*, 866 F. Supp. 2d 343, 350 (D.N.J. 2012) (Schneider, J.)); *see*

8

*Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010). Thus, the Court must decide whether HCC's claims are based directly on the Kinsale Policy by looking to the "core of this case." *Griswold*, 762 F.3d at 273-74 (quoting *DuPont*, 269 F.3d at 201).

The Court finds that all of HCC's claims seek to enforce the Kinsale Policy or assert claims based on the Kinsale Policy. Counts One through Four of the complaint seek declaratory relief "pursuant to the terms of the Kinsale Policies" and stemming from Kinsale's alleged breach of the Kinsale Policy. (*See* D.E. 1, Compl. ¶¶ 1, 50-65.) In Count Five, HCC brings a "contribution" claim, requesting reimbursement for the costs HCC expended "[a]s a result of Kinsale's failure to defend" the additional insureds pursuant to the Kinsale Policy. (*Id.* ¶¶ 66-70.) Equitable estoppel therefore applies; although HCC is a non-signatory to the Kinsale Policy, HCC's claims are based on, and seek to enforce, the terms of the Kinsale Policy such that it has "knowingly exploited" the Kinsale Policy. *See Hunish v. Assisted Living Concepts, Inc.*, 2010 WL 1838427, at *7 (D.N.J. May 6, 2010) (Bumb, J.) (compelling the arbitration of claims stemming from the defendant's alleged failure to fulfil a contractual duty).

HCC does not meaningfully discuss why its complaint—which is entirely based on Kinsale's alleged wrongful "nonperformance," i.e., its breach, of the Kinsale Policy and attaches the policy as an exhibit—does not "seek[] to enforce terms of that contract or assert[] claims" based on it. *Griswold*, 762 F.3d at 272; *see also Haskins*, 866 F. Supp. 2d at 352 (noting that "if there was a dispute as to the scope of First American's coverage or duty to defend, the result would also likely be different because plaintiffs would be seeking to take advantage of specific terms in First American's policy"). Rather, HCC argues that it sued Kinsale for contribution and the declaratory judgment claims all derive from this contribution claim. (D.E. 31, Opp., at 9 & n.1.) It argues that it is not receiving a direct benefit under the Kinsale Policy because it pleads a

9

contribution claim, rather than a subrogation claim; its right to contribution exists independently from its insured's rights under the Kinsale Policy; and its rights are only indirectly based on the policy. (*Id.* at 9-11.) For completeness, the Court addresses this argument, though it notes that the requirement of "direct benefits"—the standard that HCC focuses on—is a permissible, but not necessary, part of the relevant standard.[2]

Contribution and subrogation are distinct legal concepts. Contribution is defined as "[t]he right that gives one of several persons who are liable on a common debt the ability to recover proportionately from each of the others when that one person discharges the debt for the benefit of all." *Sentry Select Ins. Co. v. Clark*, 2021 WL 2472705, at *6 (D.N.J. June 17, 2021) (Rodriguez, J.) (quoting *Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 327 (D.N.J. 2013) (Hillman, J.)). "[T]he right to equitable contribution arises only when all of the insurance carriers share the same level of obligation on the same risk as to the same insured." *Id.* at *7 (internal citation omitted). Additionally, this right "exist[s] independently of the insured's rights." *Liberty Int'l Underwriters*, 955 F. Supp. at 327.

On the other hand, subrogation is "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the

---

[2] The Court notes that the test set forth in *Griswold* stems from the Fifth Circuit's 2010 opinion in *Noble*, 620 F.3d 469. However, not all circuits have adopted this two-part standard, including the Second Circuit. *See Certain Underwriters at Llyod's, London v. Allied Pros. Ins. Co.*, 2023 WL 4449570, at *8 n.7 (W.D.N.Y. July 11, 2023) ("The Fifth Circuit has held that a nonsignatory may be estopped from avoiding an arbitration clause '(1) by knowingly seeking and obtaining "direct benefits" from that contract; or (2) by seeking to enforce the terms of that contract *or asserting claims that must be determined by reference to that contract*.' . . . [T]he Second Circuit has not explicitly adopted the latter standard.").

As such, the New York caselaw that HCC cites in its opposition only analyzes the "direct benefits" standard. *See id.*; *Danaher Corp. v. Travelers Indem. Co.*, 2014 WL 7008939, at *8 (S.D.N.Y. Dec. 12, 2014). But this Circuit permits equitable estoppel based on either standard.

rights of the other in relation to the debt or claim, and its rights, remedies or securities." *Sentry Select*, 2021 WL 2472705, at *7 (quoting *Liberty Int'l Underwriters*, 955 F. Supp. 2d at 327).  In essence, the insurer "steps into the shoes of its insured, assumes the rights of the insured, and is subject to the same defenses as the insured.  *Id.* (internal citation and quotation marks omitted); *see Commercial Union Ins. Co. v. Bituminous Cas. Corp.*, 851 F.2d 98, 100 (3d Cir. 1988) ("The insurer who pays for a loss obtains the insured's right of action against a third party ultimately responsible for the loss.").

"Subrogation applies where multiple insurers cover **different** risks."  *Sentry Select*, 2021 WL 2472705, at *7 (emphasis in original).  Courts have found that primary insurance carriers and excess insurance carriers insure different risks; consequentially, "excess insurers are limited to equitable subrogation when seeking reimbursement from a primary insurer."  *Id.* (quoting *Fireman's Fund Ins. Co. v. Com. & Indus. Ins. Co.*, 2000 WL 1721080, at *5 (N.D. Cal. Nov. 7, 2000)).

Based on the foregoing principles, the Court concludes that HCC is bringing a subrogation rather than a contribution claim at Count Five.  HCC is not seeking partial reimbursement of a proportional risk it shares with Kinsale.  Rather, it is seeking complete reimbursement under its theory that it provided an excess insurance policy to the additional insureds while Kinsale provided primary insurance.  (D.E. 1, Compl. ¶¶ 27-43.)  Since "primary and excess insurance carriers insure different risks," HCC cannot make out a contribution claim, which in turn requires that insurance carriers provided coverage for "the same risk to the same insured."[3]  *Sentry Select*, 2021 WL 2472705, at *7.

---

[3] The Court does not opine on whether HCC and Kinsale insure the same insureds.

11

Courts have found that a subrogee (here, HCC) can be compelled to arbitrate claims pursuant to a contract between the subrogor (the additional insureds) and the alleged liable party (Kinsale). *See*, *e.g.*, *Liberty Mutual Fire Ins. Co. v. Harleysville Ins. Co.*, 2022 WL 2870201, at *4-5 (D.N.J. July 20, 2022) (Wigenton, J.) ("The Rider's arbitration clause clearly covers any dispute between Suffolk and LCS related to the Project, and if Harleysville steps into Suffolk's shoes, then Harleysville will be required to arbitrate."); *Ohio Sec. Ins. Co. v. Kinsale Ins. Co.*, 2024 WL 5135737, at *4-5 (S.D.N.Y. Dec. 17, 2024) (finding, in an analogous factual situation, that the plaintiff was estopped from objecting to arbitration of its claims). This Court reaches the same conclusion here and finds that HCC would receive direct benefits under the Kinsale Policy if successful on its claim at Count Five.

HCC's final argument is that "equitable estoppel does not apply in the absence of proof that the party seeking to compel arbitration detrimentally relied on conduct by the non-signatory." (D.E. 31, Opp., at 2, 14-16 (citing *Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174 (2013)). However, HCC is conflating the knowingly exploits theory—and that theory's required elements as discussed *supra*—with the intertwinement theory.

As discussed by the New Jersey Supreme Court in *Hirsch*, "intertwinement of claims and parties, by itself, is insufficient to warrant application of equitable estoppel." 215 N.J. at 195. Instead, a party seeking to compel arbitration under an intertwinement theory should provide additional evidence of, for example, a "written arbitration clause between the parties, evidence of detrimental reliance, or at a minimum an oral agreement to submit to arbitration." *Id.* at 192-93. *Hirsch* squarely deals with the validity of the intertwinement theory under New Jersey law and does not discuss the knowingly exploits theory or its elements. Further, on another occasion, the New Jersey Supreme Court contemplated that detrimental reliance is not required in all equitable

12

estoppel cases. *See Heuer v. Heuer*, 152 N.J. 226, 237 (1998) (describing that "quasi-estoppel" prevents an individual from "taking a position inconsistent with prior conduct, if this would injure another, regardless of whether that person has actually relied thereon") (citation omitted).

Based on the foregoing, the Court finds that HCC knowingly exploited the Kinsale Policy under either part of the two-part standard articulated in *Griswold*. Therefore, the Court may compel HCC to arbitrate its claims if they fall within the scope of the arbitration agreement.

### B. Scope of the Arbitration Agreement

In determining the scope of an arbitration agreement, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 526, 555 (3d Cir. 2009) (quoting *AT & T Techs., Inc. v. Comm'ns Workers*, 475 U.S. 643, 650 (1986)). "[W]hether a dispute falls within the scope of an arbitration clause depends upon the relationship between (1) the breadth of the arbitration clause, and (2) the nature of the given claim." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014).

The Court finds that the arbitration agreement contained within the Kinsale Policy clearly covers HCC's claims. The plain terms of the clause state that "[a]ll disputes over coverage or any rights afforded under this Policy, including whether an entity or person is . . . an additional insured . . . shall be submitted to binding arbitration." (D.E. 1, Compl. & Ex. 5, Kinsale Policy, at 25-26.) HCC's claims for declaratory judgment at Counts One through Four and its equitable subrogation claim at Count Five all depend on whether BBC Englewood LLC, ARC, and FM qualify as "additional insureds" under the Kinsale Policy and the nature of their rights, if any,

13

under the policy. (*Id.* ¶¶ 50-70.) These claims are therefore within the scope of the Kinsale Policy's arbitration agreement.

### C. Stay Pending Arbitration

"Section 3 of the FAA provides that issues within the scope of an arbitration agreement shall be referred to arbitration, and that court proceedings shall be stayed" on the application of one of the parties. *Neal v. Asta Funding, Inc.*, 2014 WL 131770, at *3 (D.N.J. Jan. 6, 2014) (McNulty, J.) (citing 9 U.S.C. § 3). Section 3 provides

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . , the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Kinsale requested a stay of this action pending arbitration, which is granted.

### V. Conclusion

For the reasons set forth above, Kinsale's motion to compel arbitration is granted, and the action is stayed pending the arbitration's outcome. A separate order accompanies this opinion.

Dated: September 30, 2025                    */s/ Katharine S. Hayden*
                                             Katharine S. Hayden, U.S.D.J.